**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

AMANDA CORY,                                    )
                                                )
    Plaintiff,                              )
                                                )
v.                                              )    Case No.: 4:26-cv-161
                                                )
BAPTIST HEALTH MEDICAL GROUP, INC.,             )
                                                )
    Defendant.                              )
                                                )
    Serve:  C T Corporation System            )
          334 North Senate Avenue           )
          Indianapolis, Indiana 46204       )
                                                )

**PLAINTIFF'S COMPLAINT**
*Trial by Jury Demanded*
*Electronically Filed*

Comes now the Plaintiff, Amanda Cory ("Ms. Cory" or "Plaintiff"), by and through

counsel, and for her Complaint against the Defendant, Baptist Health Medical Group, Inc.

("Baptist" or "Defendant"), states as follows:

**PARTIES**

1.    Amanda Cory is, and at all times relevant hereto has been, a resident and citizen of the

State of Indiana. Baptist employed Ms. Cory from on or about October 11, 2021 until her

resignation effective March 7, 2025, most recently at Baptist's medical office located at

941 West McClain Avenue, Suite C, Scottsburg, Indiana 47170, in Scott County.

2.    Defendant Baptist Health Medical Group, Inc. is a nonprofit corporation organized under

the laws of the Commonwealth of Kentucky, with its principal office located at 1901

Campus Place, Louisville, Kentucky 40299. Baptist is registered to do business in, and

conducts business in, the State of Indiana, including in Scott County. Baptist's registered

agent for service of process in Indiana is C T Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204.

## JURISDICTION AND VENUE

3. This action arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Indiana Wage Payment Statute, IC 22-2-5-1, *et seq.*.

4. This Court has original subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331, because that claim arises under the laws of the United States, and pursuant to 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's Indiana Wage Payment Statute claim pursuant to 28 U.S.C. § 1367(a), because that claim is so related to Plaintiff's FLSA claim that it forms part of the same case or controversy, arising from the same payroll practices and the same employment relationship.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Scott County, Indiana, where Plaintiff worked and where Defendant altered her pay records.

7. This matter is properly assigned to the New Albany Division because Scott County, Indiana lies within that Division and a substantial part of the events giving rise to Plaintiff's claims occurred there.

## FACTUAL ALLEGATIONS

8. On or about October 11, 2021, Baptist hired Ms. Cory as a Patient Coordinator at its Baptist Health Floyd location in New Albany, Indiana.

9.  When a Patient Care Technician position became available in the Fairgrounds office in Scottsburg, Indiana, Ms. Cory completed the required training and made a lateral move to that position.

10. In May 2023, Ms. Cory was certified as a Medical Assistant and was promoted to fill a vacancy in Baptist's McClain Avenue office in Scottsburg, Indiana.

11. Ms. Cory's duties included guiding patients through the office, taking patient vitals, and assisting physicians with medical tasks.

12. Ms. Cory was a non-exempt, hourly employee. She was not employed in a bona fide executive, administrative, or professional capacity, and no exemption to the FLSA's overtime requirements applied to her.

13. Throughout her employment with Baptist, and in particular while assigned to the McClain Avenue office, Ms. Cory routinely worked more than forty (40) hours in a workweek.

14. Ms. Cory's workday typically began at 8:00 a.m., and on a number of occasions she arrived ten to fifteen minutes before 8:00 a.m. to begin her work.

15. Ms. Cory frequently worked until after 6:00 p.m. to complete her work for the day, including patient charting, patient communications, and cleaning of the office and clinical areas.

16. Chronic understaffing at the McClain Avenue office required Ms. Cory to work late on a regular basis in order to complete her own duties and the work the short-staffed office was otherwise unable to cover.

17. Ms. Cory's regular workday therefore spanned approximately ten (10) hours, so that even after Baptist's automatic thirty-minute meal deduction, her ordinary schedule routinely caused her to work in excess of forty (40) hours per workweek.

18. Baptist tracked Ms. Cory's working time through an electronic timekeeping system and paid her on a recurring pay-period basis.

19. Baptist automatically deducted thirty (30) minutes from each shift for a meal break, regardless of whether Ms. Cory actually took an uninterrupted meal break.

20. In or around late March or early April 2024, Ms. Cory observed that several hours were missing from her paycheck.

21. Ms. Cory alerted office manager Taylor Funk to the discrepancy.

22. Rather than correct the time record, Mr. Funk instructed Ms. Cory to leave early on a later shift while billing her entire shift as normal.

23. On May 22, 2024, Ms. Cory noticed that her recorded time had been altered, with roughly six (6) hours missing from that pay period.

24. Ms. Cory requested a private meeting with Mr. Funk.

25. When Ms. Cory confronted him with the missing time, Mr. Funk stated, "Somehow the time got deleted."

26. Mr. Funk then offered to enter mileage reimbursement to make up the difference, provided Ms. Cory did not tell anyone else, and he immediately entered mileage to approximate her take-home pay.

27. Ms. Cory instructed Mr. Funk not to do so and demanded that she be paid in the proper manner.

28. On information and belief, the time was not corrected in the proper manner.

29. The next day, Mr. Funk followed Ms. Cory around the office to the point that other staff members could see there was a problem, and he repeatedly asked how he could make things right.

30. Mr. Funk also stated that his supervisor, Angie Murphy, had told him to pay the difference in cash.

31. On May 24, 2024, Ms. Cory contacted payroll to request her payroll records and timecards.

32. On August 7, 2024, because no progress had been made on the payroll irregularities, Ms. Cory reached out to Ms. Murphy.

33. Ms. Murphy did not provide a clear resolution, so Ms. Cory provided a timesheet for Ms. Murphy to review.

34. On August 21, 2024, Ms. Murphy texted Ms. Cory to report that she was scheduled to meet with a human resources representative about the payroll irregularities.

35. On or about September 10, 2024, after a general meeting, Ms. Cory asked Ms. Murphy for an update on her payroll concerns, and Ms. Murphy had no additional information.

36. On September 12, 2024, Ms. Cory again contacted payroll to request her timecards.

37. On October 23, 2024, Ms. Cory informed Quality Measure representative Jeff Taylor that the payroll issues remained unresolved, and Mr. Taylor advised Ms. Cory to continue following up and demanding payment.

38. In December 2024, Mr. Funk took approximately six weeks of paternity leave.

39. On January 9, 2025, Ms. Cory raised her payroll issues in a meeting with human resources representative Michele France and the temporary office manager, Cheyenne (last name unknown).

40. Ms. France confirmed that Ms. Murphy had contacted her and that she had advised Ms. Murphy to contact payroll.

41. On January 15, 2025, Ms. Cory followed up again with human resources.

42. On January 30, 2025, Ms. Cory worked through her shift without taking a meal break, yet Baptist automatically deducted thirty (30) minutes from her recorded time for a meal break she did not take.

43. On January 31, 2025, Ms. Cory asked Mr. Funk to adjust her time to reflect the meal break she worked through, and she received no response.

44. On February 3, 2025, Ms. Cory contacted Ms. France to follow up on the payroll issues, to report that her recorded time for January 30 and 31 was incorrect, and to ask Baptist to clarify its meal-break policy.

45. On February 17, 2025, Ms. Cory again contacted Ms. France to follow up on her time claim and to ask how long the process would take, and she received no response.

46. On February 20, 2025, Ms. Cory contacted payroll representative Amanda W.

47. Following that conversation, Amanda W. contacted Ms. France about the payroll issues and asked Ms. France to call Ms. Cory.

48. Ms. France trained Ms. Cory on how to retrieve her timecards, but the version Ms. Cory could access showed only the most recent entry and did not show what a manual entry may have replaced.

49. On February 21, 2025, Ms. Cory tendered a letter to Mr. Funk and the office physicians notifying Baptist of her intent to resign effective March 7, 2025.

50. On February 24, 2025, Ms. Cory emailed human resources requesting a follow-up on her payroll issues.

51.   On March 5, 2025, the Director of Human Resources, Lisa S., contacted Ms. Cory, acknowledged awareness of the payroll issues, and asked Ms. Cory to clarify certain points.

52.   On March 6, 2025, encouraged by the call from Lisa S., Ms. Cory asked Mr. Funk whether her resignation could be deferred, and Mr. Funk indicated that he believed her resignation letter was binding.

53.   On March 7, 2025, Ms. Cory met with Ms. Murphy and Lisa S. to discuss options, but the options offered either lacked consistency or were located substantially farther from Ms. Cory's home, and Ms. Cory's resignation became effective that day.

54.   Baptist's own timekeeping records reflect numerous manual entries to, and edits of, Ms. Cory's recorded working time.

55.   Baptist, through its agents, repeatedly altered Ms. Cory's recorded time, reducing the number of hours for which she was paid.

56.   Because Ms. Cory routinely worked more than forty (40) hours per workweek, Baptist's deletion of recorded hours and its automatic deduction of meal breaks that Ms. Cory worked through reduced the hours for which she was compensated in workweeks in which she had worked overtime, and thereby deprived Ms. Cory of overtime compensation owed at one and one-half times her regular rate of pay.

57.   The timecard alterations were not isolated incidents but reflected a pattern and practice of uncompensated and improperly recorded work time. Despite Ms. Cory's repeated, documented complaints over nearly a year, which she escalated to the office manager, the regional manager, human resources, and a quality representative, Baptist took no meaningful corrective action.

58.    Baptist's supervisors, including Ms. Murphy, directed that the wage shortfalls be covered up through improper off-payroll payments, including cash and false mileage reimbursements, rather than corrected through proper payroll channels.

59.    Baptist knew that Ms. Cory worked the hours it deleted and that she was not being paid for all hours worked, including overtime hours, and Baptist failed to pay her despite that knowledge and her repeated demands.

## CAUSES OF ACTION

### COUNT ONE
*Failure to Pay Overtime Wages in Violation of the*
*Fair Labor Standards Act, 29 U.S.C. § 207*

60.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth with particularity herein.

61.    At all relevant times, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d).

62.    At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), including because its employees handled goods and materials that have moved in interstate commerce and it had an annual gross volume of sales made or business done of not less than $500,000, and because it is an institution primarily engaged in the care of the sick within the meaning of 29 U.S.C. § 203(s)(1)(B).

63.    At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1).

64.    Plaintiff was not exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213 or any other provision.

65. Plaintiff routinely worked more than forty (40) hours in a workweek and, under 29 U.S.C. § 207, was entitled to compensation at a rate of one and one-half times her regular rate of pay for all hours she worked in excess of forty (40) in a workweek.

66. Plaintiff's regular schedule, beginning at or before 8:00 a.m. and frequently extending past 6:00 p.m. to complete charting, patient communications, and cleaning, and lengthened by chronic understaffing at the office, caused her to work in excess of forty (40) hours in a workweek on a recurring basis.

67. By altering Plaintiff's recorded time and by automatically deducting meal breaks that Plaintiff worked through, Defendant failed to compensate Plaintiff at one and one-half times her regular rate of pay for all overtime hours she worked, in violation of 29 U.S.C. § 207.

68. Defendant's violations were willful. Defendant knew that Plaintiff worked the hours it deleted, was repeatedly placed on notice of the unpaid time through Plaintiff's documented complaints, and nonetheless failed to pay her overtime wages and directed that the shortfalls be concealed through off-payroll payments. Defendant made no good-faith effort to comply with the FLSA.

69. As a direct and proximate result of Defendant's violations of the FLSA, Plaintiff has been deprived of overtime compensation in an amount to be determined at trial and is entitled to recover her unpaid overtime wages, an equal amount in liquidated damages, prejudgment interest, reasonable attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

## COUNT TWO

*Failure to Pay Wages When Due in Violation of the*
*Indiana Wage Payment Statute, IC 22-2-5-1, et seq.*

70.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth with particularity herein.

71.    Defendant is an "employer," and Plaintiff was an "employee," within the meaning of the Indiana Wage Payment Statute, IC 22-2-5-1, et seq.

72.    Plaintiff voluntarily resigned her employment effective March 7, 2025. As an employee who voluntarily separated from her employment, Plaintiff is entitled to the protections of the Indiana Wage Payment Statute.

73.    By altering Plaintiff's timecards and recorded time, Defendant failed to pay Plaintiff all wages due and owing for work she actually performed, including straight-time wages for hours from which her time was improperly deducted and for meal breaks she worked through, and failed to pay those wages at the times required by IC 22-2-5-1.

74.    As of the date of this Complaint, Defendant has not paid Plaintiff all wages due for hours she actually worked.

75.    Plaintiff is entitled to recover the unpaid wages due to her, together with reasonable attorneys' fees and court costs, pursuant to IC 22-2-5-2.

76.    Defendant did not act in good faith in failing to pay Plaintiff her wages. Defendant knew of the unpaid time, was repeatedly placed on notice through Plaintiff's documented complaints, directed that the shortfalls be concealed through improper off-payroll payments rather than corrected through proper channels, and failed to pay the wages owed. Accordingly, Plaintiff is entitled to liquidated damages equal to two (2) times the amount of wages due pursuant to IC 22-2-5-2.

77.     As a direct and proximate result of Defendant's violations of IC 22-2-5-1, et seq., Plaintiff has been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Amanda Cory, respectfully prays that this Court:

a.     Declare that Defendant's conduct violated the Fair Labor Standards Act and the Indiana Wage Payment Statute;

b.     Award Plaintiff her unpaid overtime wages under the FLSA in an amount to be proven at trial;

c.     Award Plaintiff an equal amount in liquidated damages under the FLSA pursuant to 29 U.S.C. § 216(b);

d.     Award Plaintiff her unpaid wages under the Indiana Wage Payment Statute in an amount to be proven at trial;

e.     Award Plaintiff liquidated damages equal to two (2) times the amount of her unpaid wages pursuant to IC 22-2-5-2;

f.     Award Plaintiff prejudgment and post-judgment interest, reasonable attorneys' fees, and court costs pursuant to 29 U.S.C. § 216(b) and IC 22-2-5-2;

g.     Award Plaintiff all other equitable relief to which she is entitled; and

h.     Grant Plaintiff such further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

/s/ P. Stewart Abney
P. Stewart Abney
**ABNEY LAW OFFICE, PLLC**
414 Baxter Avenue, STE 265
Louisville, Kentucky 40204
T: (502) 498-8585
E: stewart@abneylegal.com
*Counsel for Plaintiff*